UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JEFFREY A. SNOWDEN, II,

         Plaintiff,

         Case No. 1:21-cv-1046

v.

         Honorable Phillip J. Green

BARRY COUNTY JAIL, et al.,

         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case, including entry of a final judgment and all post-judgment motions. (ECF No. 1, PageID.12.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.      Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Barry County Jail where Plaintiff was held as a probation violator awaiting sentence and then for a few days after he was sentenced.[1] Plaintiff sues the Barry County Jail, Doctors Andrew Messenger and Walter Albrecht, and Barry County District Court Judge Michael Schipper.

Plaintiff alleges that he was detained at the Barry County Jail from September 22, 2021, until he filed his complaint in December of 2021. (Compl., ECF No. 1, PageID.5, 11.) Shortly after filing his complaint, Plaintiff was transferred to the custody of the MDOC.

---

[1] Between Plaintiff's allegations and the MDOC's Offender Tracking Information System (OTIS), it is possible to piece together the course of Plaintiff's criminal prosecution. Plaintiff was initially arrested and held at the Barry County Jail on September 10, 2020. (Compl., ECF No. 1, PageID.4.) Thereafter, Plaintiff was determined to be incompetent by Judge Schipper. (*Id*.) Plaintiff was then sent to the Kalamazoo Psychiatric Hospital where he was treated and prescribed several drugs, including the extended-release lithium and extended-release Adderall that are the subject of this lawsuit. (*Id*.) He was stabilized there. After six months of treatment, Plaintiff was determined to be competent to stand trial. (*Id*., PageID.5.) On May 26, 2021, he returned to the Barry County Jail. He eventually pleaded guilty to aggravated stalking. He was sentenced on July 21, 2021, but released on probation. He violated the terms of his probation and was returned to the Barry County Jail. In light of the probation violation, the Court resentenced Plaintiff to imprisonment for 2 years, 6 months to 5 years.
 *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=667791 (last visited Feb. 1, 2022). By virtue of his guilty plea, Plaintiff had already been convicted; therefore he was housed at the Barry County Jail during September, October, November, and December as a convicted prisoner, not a pretrial detainee.

Plaintiff claims that the jail personnel failed to give him the medications that had been prescribed for his mental health.  Plaintiff claims further that because Defendant Schipper had ordered Plaintiff to take his medications as a condition of the probation Plaintiff was serving, the list of prescribed medications was also court-ordered.

Plaintiff was provided all of his medications except two: an extended-release lithium pill and an extended-release Adderall pill.  Plaintiff went without those medications for the first seven days at the Barry County Jail.  Shortly after Plaintiff was released to the general population, he met with a nurse.  He informed her of the prescriptions and the court's order to remain compliant with his medications.  The nurse confirmed the prescriptions with the pharmacy.  Plaintiff was then provided the extended-release lithium, but not the extended-release Adderall.  For that prescription, the pharmacy informed the nurse that a handwritten prescription was required.

Plaintiff reports that the nurse was going to call the doctor who prescribed the pills to obtain the written prescription.  She apparently did not succeed.  More than three weeks passed.  On October 24, 2021, Plaintiff was seen by Defendant Dr. Albrecht.  (*Id.*, PageID.8–9.)  Dr. Albrecht examined Plaintiff.  When Plaintiff asked about the Adderall prescription, Dr. Albrecht indicated he would not continue the prescription.  Plaintiff asked to see Defendant Dr. Messenger.  But Plaintiff was never given that opportunity.  Plaintiff, through his counsel, attempted to enlist the

3

assistance of Judge Schipper, to no avail. As of the date Plaintiff filed his complaint, he was not provided extended-release Adderall.

Plaintiff claims that he suffered severe anxiety and mental anguish because he was concerned that being out of compliance with his probation conditions might jeopardize his situation. He thought it was possible that his mental health would deteriorate to the point where he might be determined to be incompetent to stand trial. That did not happen. The complaint indicates that Plaintiff went without his extended-release lithium for about a week. Based on the allegations, however, it appears Plaintiff was provided with lithium that was not extended-release. Plaintiff does not allege any ill effects from the deprivation of the extended-release version for that week, other than the concern that his condition might deteriorate.

Plaintiff went without the extended-release Adderall for about three months. It is not clear from the complaint whether Plaintiff was provided an immediate-release version of Adderall or some comparable drug. Plaintiff identifies two symptoms that followed the deprivation of the extended-release Adderall or some comparable drug—an inability to concentrate and impulse control problems—in addition to his concern and anxiety. Plaintiff seeks compensatory and punitive damages in the amount of $10,000,000.00.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations,

4

a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive

5

rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Barry County Jail

The first named Defendant is the Barry County Jail. But, the jail is a building, not an entity capable of being sued in its own right. *See, e.g.*, *Watson v. Gill*, 40 App'x 88, 89 (6th Cir. 2002) ("The . . . Jail is not a legal entity susceptible to suit. . . . [T]he . . . Jail is a department of the county, the county is the appropriate party . . . ."). Construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the court assumes that Plaintiff intended to sue Barry County. Accordingly, the Court directs the Clerk to substitute Barry County as a Defendant in the place of Barry County Jail.

Regardless of the form of relief sought, a county is liable under § 1983 only when its official policy or custom causes the injury. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 32–33 (2010) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Claiborne Cnty.*, 103 F.3d at 508–09 .

Plaintiff's complaint says nothing about a county policy. Indeed, the only policy one might draw out of Plaintiff's allegations is a policy from the pharmacy that prescriptions for Adderall must be written and signed by the prescribing physician. That is not a county policy. Accordingly, Plaintiff has failed to state a claim against Barry County.

**B.     Judge Schipper**

Plaintiff's allegations against Judge Schipper fare no better. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." (internal quotations omitted)); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12; *Bright v. Gallia Cnty.*, 753 F.3d 639, 649 (6th Cir. 2014) (recognizing the difference between an "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter[,]" and noting that only the latter deprives a judge of judicial immunity).

7

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. Plaintiff notes that the judge required that Plaintiff take his medications as a condition of probation—setting such terms is clearly a judicial act. To the extent the judge was further involved by not holding Plaintiff to those terms or compelling the Defendants to comply with them, those, too, are plainly judicial acts. Accordingly, Judge Schipper is absolutely immune from liability. Because Judge Schipper is clearly immune from liability in this case, Plaintiff may not maintain an action for monetary damages against him. 28 U.S.C. § 1915A(b)(2).

Moreover, injunctive relief is also not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated, or that declaratory relief was unavailable. Consequently, any claim for injunctive relief would be barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

### C. Doctors Albrecht and Messenger

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly

8

attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff has not presented sufficient allegations to assess whether the conduct of the doctors could be fairly attributed to the State. Thus, arguably, he fails to state a § 1983 claim against them.

9

Moreover, even if the doctors' conduct is fairly attributable to the state, Plaintiff has failed to state a claim that the doctors violated Plaintiff's Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a

10

prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for

11

the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

But not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (internal quotation marks omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations fall short. Plaintiff insists that he should have been given extended-release Adderall, but the prescription for that drug was over a year old.[2] Moreover, it is not clear from the allegations in Plaintiff's complaint that he was not provided a different drug to take the place of the extended-release Adderall. Even if he was not, however, Plaintiff's allegations regarding Dr. Albrecht's care do not support an inference that Dr. Albrecht was aware of a substantial risk of serious harm that he then disregarded. This appears to be a simple dispute between Plaintiff and Dr. Albrecht regarding whether Plaintiff should continue with extended-release Adderall. It is not as if Dr. Albrecht failed to support the other medications Plaintiff was taking to address his mental health problems. It cannot be said that Plaintiff was denied mental health care.

Plaintiff also fails to state a claim with regard to Dr. Messenger. Plaintiff's allegations do not support the inference that Dr. Messenger was even aware of Plaintiff's concern about the extended-release Adderall. Other jail personnel informed Plaintiff that they would communicate with the doctor, but there are no allegations indicating that they did. Moreover, there are no allegations indicating Dr. Messenger's response if he was told about Plaintiff's circumstances. Without something more, it is impossible to discern whether Dr. Messenger's failure to address Plaintiff's request for extended-release Adderall was even knowing, much less purposeful. The fact that Plaintiff did not get extended-release Adderall from

---

[2] Plaintiff does not allege that either of the defendant doctors were involved in the brief interruption in dispensing Plaintiff's extended-release lithium when he first arrived at the jail. Accordingly, there can be no Eighth Amendment claim against the doctors for that interruption.

14

Dr. Messenger might be innocent, it might be purposeful, or it might be simply negligent. Plaintiff's allegations are not sufficient to support any determination. At best, Plaintiff has shown that perhaps liability is possible. That is not enough. Accordingly, Plaintiff has failed to state a claim against Dr. Messenger.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: February 2, 2022 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge